# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FRANCY FORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-09-578-M |
| | ) | |
| GOODWILL INDUSTRIES OF | ) | |
| SOUTHWEST OKLAHOMA | ) | |
| AND NORTH TEXAS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This case is scheduled for trial on the Court's May, 2010 trial docket.

Before the Court is Defendant's Motion for Summary Judgment, filed April 1, 2010. On April 22, 2010, plaintiff filed her response. Based upon the parties' submissions, the Court makes its determination.

## I.   INTRODUCTION

Plaintiff began her employment with defendant in November, 2000, as Director of Marketing and Retail Operations. On March 4, 2008, the Executive Committee of the Board of Directors ("BOD") for defendant was informed by John Conklan, defendant's CEO, he would be resigning his position. Conklan made the recommendation that plaintiff be named Interim CEO during the time the search for a permanent CEO was conducted and that she receive an additional $1,000 each month while serving as interim CEO. Defendant's BOD accepted both recommendations. The written job description for the president/CEO position includes the essential functions to be performed by the CEO which included short and long range planning, preparing and presenting the annual budget, and implementing the

1

approved budget. A bachelor's degree, though not required, is considered a plus. It is also preferred that the CEO be a graduate of or enrolled in defendant's Executive Training Program.

Defendant's Executive Committee established a search committee. The search committee was comprised of five individuals, Lindsey Stafford, Robert Turner, Lenson Hearn, Spencer Stanley and Karol Zea, all members of defendant's BOD.

Seven individuals applied for the CEO position. In June, 2008, the first set of interviews were conducted. Five of the seven applicants were interviewed. Two of the five applicants were excluded by the search committee after the first set of interviews. Second interviews of the final three applicants, Rocky Goforth, Jimmy Crews and plaintiff were conducted in July, 2008. On July 21, 2008, plaintiff submitted by e-mail her resume to another Goodwill located in Arkansas seeking job opportunities in Arkansas. Plaintiff noted with the transmission of her resume that she always wanted to retire in Arkansas, that her daughter now lives in Arkansas and that she was very eager to move to Arkansas to live closer to her family.

Thereafter, Rocky Goforth, one of the remaining three applicants, was eliminated from consideration by the search committee. The search committee then voted on the remaining two applicants, plaintiff and Jimmy Crews. The vote was split, two votes for plaintiff and three votes for Jimmy Crews. Lindsay Stafford, Robert Turner and Karol Zea voted for Jimmy Crew, and Lenson Hearn and Spencer Stanley voted for plaintiff. On July 29, 2008, the search committee reported its results to the executive committee.

On August 12, 2008, the recommendation that Jimmy Crews be hired as CEO was presented by the search committee to defendant's BOD. The BOD voted and approved the hiring of Jimmy Crews as CEO. Out of the 12 to 15 board members present plaintiff received 3 or 4 votes. On August 25,

2008, Jimmy Crews began his duties as CEO. On August 26, 2008, at the regularly scheduled meeting of the BOD, Jimmy Crews was introduced as the new CEO. On September 3, 2008, plaintiff gave notice that she would be resigning her position with defendant effective September 12, 2008.

On June 3, 2009, plaintiff filed the instant action alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA") and Oklahoma state law in the form of a *Burk* tort, as embodied in the Oklahoma Anti-discrimination Act ("OADA") and Article 5, § 46 of the Oklahoma Constitution; gender discrimination in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000e, et seq.; violations of the Equal Pay Act ("EPA") and state law which prohibits pay disparity based on gender; and breach of contract.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The moving party is entitled to summary judgment where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. When applying this standard, [the Court] examines the record and reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *19 Solid Waste Dep't Mechanics v. City of Albuquerque*, 156 F.3d 1068, 1071-72 (10th Cir. 1998) (internal citations and quotations omitted).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Furthermore, the non-movant has a burden of doing more than simply showing there is some metaphysical doubt as to the material facts. Rather, the relevant inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Neustrom v. Union*

*Pac. R.R. Co.*, 156 F.3d 1057, 1066 (10th Cir. 1998) (internal citations and quotations omitted).

III.   DISCUSSION

   A.   Age Discrimination

Plaintiff alleges defendant discriminated against her on account of age in violation of the ADEA, and Oklahoma state law. She bases this claim on the fact that Jimmy Crews, age 48, seven years her junior, was selected for the CEO position. Plaintiff also asserts she was discriminated against based on her age, when defendant hired a younger person to replace her after she resigned her position as director of marketing and retail.

Under the ADEA, it is unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age." 29 U.S.C. § 623(a)(1) (emphasis added). The United States Supreme Court recently held:

> a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the "but for" cause of the challenged adverse employer action. The burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision.

*Gross v. FBL Fin. Serv., Inc.*, --- U.S. ---, 129 S. Ct. 2343, 2352 (2009) (internal citation omitted). A plaintiff may prove causation using either direct or circumstantial evidence of discrimination. *Id.* at 2351.[1]

---

[1]In *Gross*, the Supreme Court did not discuss the effect of its holding on the *McDonnell Douglas* burden-shifting analysis in an ADEA case, but observed in a footnote that it "has not definitely decided whether the evidentiary framework of *McDonnell Douglas* continues to be applicable in ADEA cases." For purposes of the instant case, the Court will assume that it is still appropriate to use the *McDonnell Douglas* burden-shifting analysis.

4

In the Tenth Circuit, when a plaintiff relies on circumstantial evidence to establish discrimination, courts should use the *McDonnell Douglas* three-step analysis to determine whether summary judgment is appropriate. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007). Under *McDonnell Douglas,* the plaintiff must first come forward with enough evidence to state a *prima facie* case of discrimination. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973).

In an age discrimination case like this one, the plaintiff must set forth four elements to establish a *prima facie* case. Plaintiff must demonstrate that: (1) she was a member of a protected class (*i.e.*, she was over 40 years old); (2) she applied for and was qualified for the position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled by someone outside the protected class. *See Mackenzie v. City and County of Denver,* 414 F.3d 1266 (10th Cir. 2005). In this case, the Court finds that plaintiff has failed to come forward with enough evidence to state a prima facie case of age discrimination.

Plaintiff contends that Jimmy Crews, the person selected by defendant for the CEO position, was nine years her junior and that after resigning her position with defendant to take a position in Arkansas near her family, she was replaced by a significantly younger individual. Plaintiff, age 56 years, and Jimmy Crews, age 48 years, both applied for the CEO position. After two separate sets of interviews the search committee recommended Jimmy Crews for the CEO position. Defendant's BOD then voted to hire Jimmy Crews as the new CEO. The CEO position was filled by someone over 40 years of age. Additionally, there is no evidence before the Court as to the actual age of the individual that replaced her. In her complaint, plaintiff merely states her replacement was "significantly younger". Plaintiff admits in her deposition that it is merely her belief that age was a factor in defendant's decision not to select her for the CEO position. Plaintiff also admits it was her decision to resign her position as

5

director of marketing to take a position in Arkansas near her family. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has failed to present any evidence showing that she was replaced by someone outside the protected class or that the CEO position was filled by someone outside the protected class.

Accordingly, the Court finds defendant is entitled to summary judgment on plaintiff's age discrimination claim.

### B. Gender Discrimination

To establish a prima facie case of gender discrimination, plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she was discharged or suffered some other adverse employment action; and (4) she was treated less favorably than similarly-situated employees, outside the protected class, or her position was not eliminated after her discharge. *See Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 531 (10th Cir. 1998); *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Defendant does not contest plaintiff's ability to establish a prima facie case of gender discrimination.

Once plaintiff has established a prima facie case of discrimination, the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1191 (10th Cir. 2000). Defendant asserts plaintiff was not promoted because Jimmy Crews, the selected applicant, was better qualified for the CEO position. A review of Mr. Crews' resume reveals Mr. Crews had experience in programs, finance and accounting, and supervision. He had a college degree and was working towards his master's degree. Mr. Crews was also participating in the Goodwill *Executive Training Program.* Plaintiff's resume does not include programs experience, accounting or financial

skills comparable to Mr. Crews.  Plaintiff does not have a degree nor has she been accepted into defendant's *Executive Training Program.*  The CEO job description lists under the experience and education requirements section that a bachelors degree with courses in such subjects as public relations, social welfare, vocational services, industrial relations, or business administration is a plus and that being a graduate of the Executive Training Program or enrolled in the program is preferred.  The Court finds defendant has met its burden to produce a legitimate non-discriminatory reason for not promoting plaintiff to CEO.

Once defendant meets its burden of producing a facially nondiscriminatory reason for its failure to promote plaintiff, the presumption of discrimination established in the *prima facie* case evaporates. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993).  Plaintiff must now present evidence to show defendant discriminated against her in not promoting her on the impermissible basis of her gender. *Id.* at 507-08.  Plaintiff may meet her burden of persuasion by proving defendant's proffered reason is a pretext for illegal discrimination or by providing direct evidence of discrimination.  *Furr v. AT&T Techs., Inc.*, 824 F.2d 1537, 1549 (10th Cir. 1987).

The Court has carefully reviewed the parties' briefs and evidentiary submissions.  Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in plaintiff's favor, the Court finds plaintiff has not presented sufficient evidence to create a genuine issue of material fact as to whether defendant's reason for plaintiff's not being promoted is pretext.  Specifically, the Court finds that plaintiff has not submitted sufficient evidence to create a dispute as to whether gender was an impermissible factor in plaintiff's not being selected for promotion.

In support of her gender claim plaintiff relies upon several gender related comments made by members of the selection committee and the president of the BOD.   First, plaintiff contends Karol Zea,

a member of the selection committee, told Spencer Stanley, another member of the selection committee, that the only reason plaintiff performed well as the retail operations manager was because she worked under a "strong male". Plaintiff, however, fails to submit any proof this statement was ever made. In her deposition Karol Zea denies making any statement that she was reluctant to hire a woman CEO or that she heard any BOD member suggesting that they did not want to hire a woman as CEO. In response to counsel's question, "[d]o you recall making statements to the search committee that you felt that Francy Ford had only performed well under Mr. Conklan because she was 'under the direction of a strong man'", Karol Zea replied "No, I do not." Karol Zea deposition at pg. 76, ln. 7-11. In her deposition Karol Zea also stated she selected Jimmy Crews for the CEO position because he had knowledge in all areas of expertise required in the job description. Plaintiff also contends gender comments were made by Lindsey Stafford and Diane Denham, two members of defendant's BOD. Plaintiff states Lindsey Stafford, chair of the search committee, told Lily Jeffcoat, an employee of defendant, that he voted for Jimmy Crews because he was a Christian man. In her deposition Lily Jeffcoat states that during a general conversation with Lindsey Stafford 2 to 3 months after Crews was hired as the new CEO, Stafford reassured her that the company was going to be better because he picked Crews because he thought he was a good Christian man. Lily Jeffcoat also stated she thought Jimmy Crew's being Christian was more important to Lindsey Stafford than his being a man. Ms. Jeffcoat denied ever having a conversation with Stafford about why he voted for Crews over plaintiff. On December 16, 2009, during his deposition Lindsey Stafford was asked by counsel if he had made any comments that he believed the CEO for Goodwill should be a man. Lindsey Stafford responded, "no". Plaintiff's counsel then inquired of Lindsey Stafford "And do you believe that to be true?", and Stafford replied, " Yes, I do". Lastly, plaintiff submits that Diane Denham, her friend of 30 years, "testified" that

8

the selection committee was looking for a male authority figure. Diane Denham, president of defendant's BO, stated in her deposition that after her close friend did not get the position she told her that it was her personal opinion that plaintiff did not get the position "not so much that she was a female, but weaker because less experience, maybe less – but not so much that she was a female, but they probably were looking for a male authority figure". When asked why the selection committee recommended Jimmy Crews for CEO, Diane Denham stated it was his education, management experience, ideas and references. As president of the BOD Denham did not vote on the selection of the CEO. Denham also denied having any conversations with any members of the search committee relative to gender.

The Court finds that even had there been evidence to substantiate plaintiff's allegations that isolated statements about gender were made by three members of the search committee, these comments are not evidence tending to prove pretext. *See Antionio v. Sygma Network, Inc.,* 458 F.3d 1177, 1184 (10th Cir. 2006) The gender-related comments submitted were all made subsequent to the selection process with the exception of the alleged "strong male" comment made by Karol Zea, which she does not recall ever making. Likewise Lindsey Stafford denies making the "Christian man" comment. Even if the Court were to accept as true for purposes of this motion that the "Christian man" or the "strong man" comments were made, plaintiff has failed to place these comments close in time or proximity to the selection process. *Id.* Finally, in relation to the "male authority figure" comment, Diane Denham admits this was only her personal opinion which she shared with plaintiff after plaintiff was not selected CEO. Statements which are merely expressions of personal opinion or bias do not constitute evidence of discrimination. *EEOC v. Wil-Tel, Inc.,* 81 F.3d 1508, 1514 (10th Cir. 1996). The Court does not find plaintiff has submitted sufficient evidence to show pretext in defendant's reason for not promoting

plaintiff to CEO.

Accordingly, the Court finds that defendant is entitled to summary judgment as to plaintiff's gender discrimination claim.

### C. Equal Pay Claim

To establish a prima facie case under the EPA the plaintiff has the burden of proving (1) she was performing work which was substantially equal to that of the male employees, considering the skills, duties, supervision, effort and responsibilities of the jobs; (2) the conditions where the work was performed were basically the same; and (3) the male employees were paid more under such circumstances. *Mickelson v. New York Life Ins. Co.,* 460 F.3d 1304, 1311 (10th Cir. 2006). Once a prima facie case has been met the burden then shifts to the defendant to prove that any wage disparity was justified by proving a seniority system or merit system exists, a pay system based upon quantity or quality of output or any factor other than sex.

Defendant contends plaintiff's position as interim CEO by definition is not the same as CEO, in particular that the CEO position comes with inherent responsibilities not incumbent upon someone acting as interim CEO. Defendant also contends the $1,000.00 stipend was recommended by the former CEO John Conklan. In his deposition, Mr. Conklan stated he recommended plaintiff for the interim CEO position and the $1,000.00 monthly stipend while plaintiff held the interim position because he had received a $1,000.00 stipend while he served as interim CEO and thought it was fair. The BOD accepted both recommendations from Mr. Conklan. Plaintiff contends acting in the interim position for 5 months entitles her to the same pay as the permanent CEO, not merely an additional $1,000.00 per month. The Court finds defendant has submitted sufficient evidence to prove the wage disparity between the permanent CEO salary and the $1,000.00 increase in plaintiff's salary as director of

10

marketing and retail operations while serving as interim CEO was premised on non discriminatory factors.

Accordingly, the Court finds defendant is entitled to summary judgment on plaintiff's EPA wage disparity claim.

D.     Breach of Contract

A contract is an agreement to do or not to do a certain thing. Okla. Stat. tit. 15, §1. It is essential to the existence of a contract that there should be: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. Okla. Stat. tit. 15, §2. A contract's terms must be reasonably certain as to establish an enforceable contract. *Heldenbrand v. Stevenson*, 249 F.2d 424, 427 (10th Cir. 1957). Title 15 also provides that a contract is either expressed or implied. Okla. Stat. tit. 15, §133. The existence and terms of an implied contract are manifested by conduct. *Wattie Wolfe Co. v. Superior Contractors, Inc.,* 417 P.2d 302, 308 (Okla. 1966).

The implied in fact doctrine applies only when there is no tangible evidence from which to determine whether in fact an agreement exists. *Watkins v. Watkins,* 177 P.3d 1114, 1118 (Okla. 2007). The Court in such situations is compelled to resort to the conduct of the parties. Contracts implied in fact arise where the intent of the parties is not expressed. *Ray F. Fischer Co. v. Loeffler-Green Supply Co.,* 289 P.2d 139 (Okla. 1955). However, an express or written contract excludes the possibility of an implied contract of a different or contradictory nature. *Fox v. Cities Serv. Oil Co.,* 200 P.2d 398, 400 (1948).

Plaintiff contends Mr. Conklin, defendant's former CEO, not only recommended her for the interim CEO position but also told her that the permanent CEO position would be hers after 45-60 days. Mr. Conklin denies making this statement. Both parties agree only the BOD can hire the CEO. There

is no written document before the Court.

The Court has carefully reviewed the parties' briefs and evidentiary submissions. Viewing the evidence in the light most favorable to plaintiff and viewing all reasonable inferences in her favor, as the Court must when addressing a motion for summary judgment, the Court finds plaintiff has failed to submit sufficient evidence of breach of contract as a matter of law.

In the case at bar, defendant contends there was no agreement reached between plaintiff and defendant relative to the permanent CEO position and that plaintiff was only offered the interim position. Additionally, defendant contends that no one with authority gave any assurances to plaintiff that she would be the new CEO. Finally, defendant contends that plaintiff submitted an application for the position the same as all the other applicants. Plaintiff contends the former CEO told her that she would be the permanent CEO in 45 to 60 days after her appointment as interim CEO. Even though Mr. Conklan denies making any such assurance, plaintiff has presented no evidence of contract terms, acceptance or confirmation of plaintiff's receiving the permanent position. Both parties agree and the same is reflected in defendant's by-laws, the former CEO, John Conklin, did not have the authority to hire or promise to hire the CEO only the BOD had said authority.

Accordingly, the Court grants defendant summary judgment as to plaintiff's breach of contract claim.

IV. CONCLUSION

For the reasons set forth above, the Court GRANTS defendant Goodwill Industries of Southwest Oklahoma and North Texas, Incorporated's Motion for Summary Judgment [docket no. 32].

**IT IS SO ORDERED this 1st day of June, 2010.**

/s/ Vicki Miles-LaGrange
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE